UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JUSTIN PURVIS, and CORRIE PURVIS,

                                Plaintiffs,                        Case No. 2:20-CV-00639

                 v.                             **AMENDED ANSWER WITH**
                                                   **AFFIRMATIVE DEFENSES**
GOLDEN BELL ENTERTAINMENT, LLC, a California    **AND COUNTERCLAIMS**
limited liability company, GOLDEN BELL STUDIOS,
LLC, a Nevada limited liability company, and MARC
GOLDNER,

                                Defendants.
-------------------------------------------------------------------X

        Defendants Golden Bell Entertainment, LLC ("GB Entertainment"), Golden Bell Studios

LLC ("GB Studios"), and Marc Goldner (individually "Goldner", collectively, with GB

Entertainment and GB Studios, "Defendants"), through their attorneys Moritt Hock & Hamroff

LLP, as and for their Amended Answer with Counterclaims to the complaint (the "Complaint")

filed by Plaintiffs Justin Purvis and Corrie Purvis ("Plaintiffs"), state as follows:

## NATURE OF THE ACTION

        1.     Defendants deny the allegations contained in Paragraph 1 of the Complaint.

        2.     Defendants deny the allegations contained in Paragraph 2 of the Complaint,

except admit the existence of certain contracts entered into between Plaintiffs and GB

Entertainment.

        3.     Defendants deny the allegations contained in Paragraph 3 of the Complaint.

        4.     Defendants deny the allegations contained in Paragraph 4 of the Complaint.

        5.     Defendants deny the allegations contained in Paragraph 5 of the Complaint.

        6.     Defendants deny the allegations contained in Paragraph 6 of the Complaint.

**THE PARTIES**

7.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint and therefore deny them.

8.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint and therefore deny them.

9.      Defendants deny the allegations contained in Paragraph 9 of the Complaint.

10.     Defendants deny the allegations contained in Paragraph 10 of the Complaint.

11.     Defendants admit to the allegations contained in Paragraph 11 of the Complaint.

12.     Defendants admit to the allegations contained in Paragraph 12 of the Complaint.

13.     Defendants admit the allegations contained in Paragraph 13 of the Complaint.

14.     Defendants deny the allegations contained in Paragraph 14 of the Complaint.

15.     Defendants deny the allegations contained in Paragraph 15 of the Complaint.

16.     Defendants deny the allegations contained in Paragraph 16 of the Complaint.

17.     Defendants admit the allegations contained in Paragraph 17 of the Complaint.

18.     Defendants deny the allegations contained in Paragraph 18 of the Complaint.

19.     Defendants deny the allegations contained in Paragraph 19 of the Complaint.

20.     Paragraph 20 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 20 of the Complaint.

**JURISDICITON AND VENUE**

21.     Defendants deny the allegations contained in Paragraph 21 of the Complaint.

22.     Defendants deny the allegations contained in Paragraph 22 of the Complaint.

23.     Defendants deny the allegations contained in Paragraph 23 of the Complaint.

24.     Defendants deny the allegations contained in Paragraph 24 of the Complaint.

## FACTUAL BACKGROUND

25.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint and therefore deny them.

26.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint and therefore deny them.

27.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint and therefore deny them.

28.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint and therefore deny them.

29.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint and therefore deny them.

30.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint and therefore deny them.

31.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint and therefore deny them.

32.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint and therefore deny them.

33.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint and therefore deny them.

34.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the Complaint and therefore deny them.

35. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint and therefore deny them.

36. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint and therefore deny them.

37. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 of the Complaint and therefore deny them.

38. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the Complaint and therefore deny them.

39. Defendants deny the allegations contained in Paragraph 39 of the Complaint.

40. Defendants deny the allegations contained in Paragraph 40 of the Complaint.

41. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 of the Complaint and therefore deny them.

42. Defendants admit the allegations contained in Paragraph 42 of the Complaint.

43. Defendants deny the allegations contained in Paragraph 43 of the Complaint.

44. Defendants deny the allegations contained in Paragraph 44 of the Complaint.

45. Defendants deny the allegations contained in Paragraph 45 of the Complaint.

46. Defendants deny the allegations contained in Paragraph 46 of the Complaint.

47. Defendants deny the allegations contained in Paragraph 47 of the Complaint.

48. Defendants admit the allegations contained in Paragraph 48 of the Complaint.

49. Defendants deny the allegations contained in Paragraph 49 of the Complaint.

50. Defendants deny the allegations contained in Paragraph 50 of the Complaint.

51. Defendants admit the allegations contained in Paragraph 51 of the Complaint.

52. Defendants deny the allegations contained in Paragraph 52 of the Complaint.

53.     Defendants deny the allegations contained in Paragraph 53 of the Complaint.

54.     Defendants deny the allegations contained in Paragraph 54 of the Complaint.

55.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55 of the Complaint and therefore deny them.

56.     Defendants deny the allegations contained in Paragraph 56 of the Complaint.

57.     Defendants admit the allegations contained in Paragraph 57 of the Complaint.

58.     Defendants admit the allegations contained in Paragraph 58 of the Complaint.

59.     Defendants deny the allegations contained in Paragraph 59 of the Complaint.

60.     Defendants admit that Plaintiffs signed an Addendum to the September 14, 2016 Agreement and deny all other allegations contained in Paragraph 60 of the Complaint.

61.     Defendants admit the allegations contained in Paragraph 61 of the Complaint.

62.     Defendants admit the allegations contained in Paragraph 62 of the Complaint.

63.     Defendants admit the allegations contained in Paragraph 63 of the Complaint.

64.     Defendants admit the allegations contained in Paragraph 64 of the Complaint.

65.     Defendants deny the allegations contained in Paragraph 65 of the Complaint, and respectfully refer this Court to the relevant contracts referenced by Plaintiffs in Paragraph 65 of the Complaint for their full terms and import.

66.     Defendants deny to the allegations contained in Paragraph 66 of the Complaint, and respectfully refer this Court to the relevant contracts referenced by Plaintiffs in Paragraph 65 of the Complaint for their full terms and import.

67.     Defendants admit to the allegations contained in Paragraph 67 of the Complaint.

68.     Defendants deny the allegations contained in Paragraph 68 of the Complaint.

69.     Defendants deny the allegations contained in Paragraph 69 of the Complaint.

70.     Defendants deny the allegations contained in Paragraph 70 of the Complaint.

71.     Defendants deny the allegations contained in Paragraph 71 of the Complaint.

72.     Defendants deny the allegations contained in Paragraph 72 of the Complaint.

73.     Defendants deny the allegations contained in Paragraph 73 of the Complaint.

74.     Defendants deny the allegations contained in Paragraph 74 of the Complaint.

75.     Defendants deny the allegations contained in Paragraph 75 of the Complaint.

76.     Defendants deny the allegations contained in Paragraph 76 of the Complaint.

77.     Defendants deny the allegations contained in Paragraph 77 of the Complaint.

78.     Defendants deny the allegations contained in Paragraph 78 of the Complaint.

79.     Defendants deny the allegations contained in Paragraph 79 of the Complaint.

80.     Defendants deny the allegations contained in Paragraph 80 of the Complaint.

81.     Defendants deny the allegations contained in Paragraph 81 of the Complaint.

82.     Defendants deny the allegations contained in Paragraph 82 of the Complaint.

83.     Defendants deny that the February 22, 2017 Agreement is an employment contract and admit the remaining allegations contained in Paragraph 83 of the Complaint.

84.     Defendants deny that the February 22, 2017 Agreement is an employment contract and admit the remaining allegations contained in Paragraph 84 of the Complaint.

85.     Defendants deny they had any obligations to inform Plaintiff Justin Purvis of any rights or post any notices, and on that basis deny all allegations contained in Paragraph 85 of the Complaint.

## AS AND FOR A RESPONSE TO THE FIRST CAUSE OF ACTION

86.     Defendants incorporate by reference herein and re-allege their responses to Paragraphs 1 through 85 of the Complaint.

6

87.    Defendants deny the allegations contained in Paragraph 87 of the Complaint.

88.    Defendants deny the allegations contained in Paragraph 88 of the Complaint.

89.    Defendants deny the allegations contained Paragraph 89 of the Complaint.

90.    Defendants deny the allegations contained in Paragraph 90 of the Complaint.

91.    Defendants deny the allegations contained in Paragraph 91 of the Complaint.

92.    Defendants deny the allegations contained in Paragraph 92 of the Complaint.

93.    Defendants deny the allegations contained in Paragraph 93 of the Complaint.

94.    Defendants deny the allegations contained in Paragraph 94 of the Complaint.

95.    Defendants deny the allegations contained in Paragraph 95 of the Complaint.

96.    Defendants deny the allegations contained in Paragraph 96 of the Complaint.

97.    Defendants deny the allegations contained in Paragraph 97 of the Complaint.

98.    Defendants deny the allegations contained in Paragraph 98 of the Complaint.

99.    Defendants deny the allegations contained in Paragraph 99 of the Complaint.

100.   Defendants deny the allegations contained in Paragraph 100 of the Complaint.

101.   Defendants deny the allegations contained in Paragraph 101 of the Complaint.

102.   Defendants deny the allegations contained in Paragraph 102 of the Complaint.

103.   Defendants deny the allegations contained in Paragraph 103 of the Complaint.

104.   Defendants deny the allegations contained in Paragraph 104 of the Complaint.

105.   Defendants deny GB Entertainment has breached The Contracts, as referenced by Plaintiffs in Paragraph 105 of the Complaint, and on that basis deny that Plaintiffs' have alleged grounds for demanding the relief requested in Paragraph 105 of the Complaint.

## AS AND FOR A RESPONSE TO THE SECOND CAUSE OF ACTION

106.    Defendants incorporate by reference herein and re-allege their responses to Paragraphs 1 through 105 of the Complaint.

107.    Defendants deny the allegations contained in Paragraph 107 of the Complaint.

108.    Defendants deny the allegations contained in Paragraph 108 of the Complaint.

109.    Defendants deny the allegations contained in Paragraph 109 of the Complaint.

## AS AND FOR A RESPONSE TO THE THIRD CAUSE OF ACTION

110.    Defendants incorporate by reference herein and re-allege their responses to Paragraphs 1 through 109 of the Complaint.

111.    Defendants deny the allegations contained in Paragraph 111 of the Complaint.

112.    Defendants deny the allegations contained in Paragraph 112 of the Complaint.

113.    Defendants deny the allegations contained in Paragraph 113 of the Complaint.

114.    Defendants admit the allegations contained in Paragraph 114 of the Complaint.

115.    Defendants deny the allegations contained in Paragraph 115 of the Complaint.

116.    Defendants deny the allegations contained in Paragraph 116 of the Complaint.

117.    Defendants deny the allegations contained in Paragraph 117 of the Complaint.

118.    Defendants deny the allegations contained in Paragraph 118 of the Complaint.

119.    Defendants deny that the February 22, 2017 Agreement is an employment contract and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 119 of the Complaint and therefore deny them.

120.    Defendants deny the allegations contained in Paragraph 120 of the Complaint.

121.    Defendants deny the allegations contained in Paragraph 121 of the Complaint.

122.     Paragraph 122 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 122 of the Complaint.

123.     Defendants deny that the February 22, 2017 Agreement is an employment contract and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 123 of the Complaint and therefore deny them.

124.     Defendants deny the allegations contained in Paragraph 124 of the Complaint

125.     Defendants deny the allegations contained in Paragraph 125 of the Complaint.

126.     Defendants deny the allegations contained in Paragraph 126 of the Complaint.

127.     Defendants deny the allegations contained in Paragraph 127 of the Complaint.

128.     Defendants deny the allegations contained in Paragraph 128 of the Complaint.

129.     Defendants deny the allegations contained in Paragraph 129 of the Complaint.

130.     Defendants deny the allegations contained in Paragraph 130 of the Complaint.

131.     Defendants deny the allegations contained in Paragraph 131 of the Complaint.

132.     Defendants deny the allegations contained in Paragraph 132 of the Complaint.

133.     Defendants deny the allegations contained in Paragraphs 133 of the Complaint.

**AS AND FOR A RESPONSE TO THE FOURTH CAUSE OF ACTION**

134.     Defendants incorporate by reference herein and re-allege their responses to Paragraphs 1 through 133 of the Complaint.

135.     Paragraph 135 of the Complaint purports to set forth a new definition for the term "defendants" to which no response is necessary.  To the extent a response is required, Defendants deny the allegations contained therein.

136.     Defendants deny the allegations contained in Paragraph 136 of the Complaint.

137.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 137 of the Complaint and therefore deny them.

138.     Defendants deny the allegations contained in Paragraph 138 of the Complaint.

139.     Defendants deny the allegations contained in Paragraph 139 of the Complaint.

140.     Defendants deny the allegations contained in Paragraph 140 of the Complaint.

141.     Defendants deny the allegations contained in Paragraph 141 of the Complaint.

142.     Defendants deny the allegations contained in Paragraph 142 of the Complaint.

143.     Defendants deny the allegations contained in Paragraph 143 of the Complaint.

144.     Defendants deny the allegations contained in Paragraph 144 of the Complaint.

145.     Defendants deny the allegations contained in Paragraph 145 of the Complaint.

146.     Defendants deny the allegations contained in Paragraph 146 of the Complaint.

147.     Defendants deny the allegations contained in Paragraph 147 of the Complaint, except admit that Goldner had a meeting with Plaintiffs in Plaintiffs' home.

148.     Defendants deny the allegations contained in Paragraph 148 of the Complaint.

149.     Defendants deny the allegations contained in Paragraph 149 of the Complaint, and this denial applies with equal force as to whether Plaintiffs mean Goldner, GB Entertainment or both with their use of the term "defendants", as purportedly defined in Paragraph 135 of the Complaint.

150.     Defendants deny the allegations contained in Paragraph 150 of the Complaint.

151.     Defendants deny the allegations contained in Paragraph 151 of the Complaint.

152.     Defendants deny the allegations contained in Paragraph 152 of the Complaint, and this denial applies with equal force as to whether Plaintiffs mean Goldner, GB Entertainment or

both with their use of the term "defendants", as purportedly defined in Paragraph 135 of the Complaint.

153.    Defendants deny the allegations contained in Paragraph 153 of the Complaint, and this denial applies with equal force as to whether Plaintiffs mean Goldner, GB Entertainment or both with their use of the term "defendants", as purportedly defined in Paragraph 135 of the Complaint.

154.    Defendants deny the allegations contained in Paragraph 154 of the Complaint.

155.    Defendants deny the allegations contained in Paragraph 155 of the Complaint.

156.    Defendants deny the allegations contained in Paragraph 156 of the Complaint.

157.    Defendants deny the allegations contained in Paragraph 157 of the Complaint and on that basis deny that Plaintiffs have alleged grounds for the relief demanded therein, and this denial applies with equal force as to whether Plaintiffs mean Goldner, GB Entertainment or both with their use of the term "defendants", as purportedly defined in Paragraph 135 of the Complaint.

## AFFIRMATIVE DEFENSES

Defendants hereby assert the following affirmative defenses and reserve the right to assert additional affirmative defenses, as warranted by facts learned through investigation and discovery.

### FIRST AFFIRMATIVE DEFENSE

158.    The Complaint fails to state a claim upon which relief can be granted against GB Entertainment.

159.    The Complaint fails to state a claim upon which relief can be granted against GB Studios.

11

160.    The Complaint fails to state a claim upon which relief can be granted against Goldner.

## SECOND AFFIRMATIVE DEFENSE

161.    All acts undertaken by Marc Goldner with regard to the subject matter of the Complaint were solely in his capacity as an officer, member and/or employee of Golden Bell Entertainment, LLC and/or in his capacity as an officer, member, and/or employee of Golden Bell Studios, LLC.

## THIRD AFFIRMATIVE DEFENSE

162.    The claims in the Complaint alleged against Defendants should be dismissed, in whole or in part, because of Plaintiffs' unclean hands and the culpable and/or fraudulent conduct of Plaintiffs.

163.    In order to entice Defendants to invest in Plaintiffs' Movie Buff game, Plaintiffs represented to Defendants that they had successfully launched an online Kickstarter campaign that raised $25,000.00 in public funding from interested consumers.  Defendants relied on this representation when they first entered into a collaboration agreement with Plaintiffs in September 2016 to market and distribute Movie Buff games.

164.    However, approximately $23,000 of the Kickstarter funding Plaintiffs touted was from their own funds, thereby materially misrepresenting the commercial viability and market demand for Movie Buff.

165.    Defendants did not know this fact until after they heavily invested in and contracted with Plaintiffs.

## FOURTH AFFIRMATIVE DEFENSE

166.   The Complaint's First Cause of Action for Breach of Contract alleged against Defendants should be dismissed because Plaintiffs materially breached "The Contracts", as defined by Plaintiffs in the Complaint.

## FIFTH AFFIRMATIVE DEFENSE

167.   The claims in the Complaint alleged against Defendants should be dismissed, in whole or in part, based on waiver and/or estoppel.

## SIXTH AFFIRMATIVE DEFENSE

168.   The claims in the Complaint alleged against Defendants should be dismissed, in whole or in part, because Defendants acted in a commercially reasonable manner.

## SEVENTH AFFIRMATIVE DEFENSE

169.   The Complaint's Fourth Cause of Action fails to plead fraud with the requisite particularity.

## EIGHTH AFFIRMATIVE DEFENSE

170.   Defendants, individually and collectively, did not neglect, fail to perform, or otherwise violate their duties as set forth in "The Contracts", as defined by Plaintiffs in the Complaint.

## NINTH AFFIRMATIVE DEFENSE

171.   The Complaint's Third Cause of Action alleged against Defendants for violations of the FLSA should be dismissed because Plaintiff Justin Purvis is not, nor ever has been, an employee of any of the Defendants within the meaning of 29 U.S.C. § 203.

## TENTH AFFIRMATIVE DEFENSE

172.     Any damages allegedly suffered by Plaintiffs were not caused, either directly or indirectly, by the acts or omissions of Defendants.

## ELEVENTH AFFIRMATIVE DEFENSE

173.     Plaintiffs are barred from relief due to their failure to mitigate their damages, if any.

## TWELTH AFFIRMATIVE DEFENSE

174.     The Complaint should be dismissed, in whole or in part, for lack of personal and/or subject matter jurisdiction.

## THIRTEENTH AFFIRMATIVE DEFENSE

175.     The Complaint, in whole or in part, is barred by the Statute of Limitations.

## COUNTERCLAIM

176.     Defendants and Counterclaim-Plaintiffs GB Entertainment and GB Studios, by their undersigned attorneys, hereby assert the following counterclaims against Plaintiff and Counterclaim-Defendant Justin Purvis.

## PARTIES

177.     Counterclaim-Plaintiff GB Entertainment is a California limited liability company whose principal place of business is in Connecticut.

178.     Counterclaim-Plaintiff GB Studios is a Nevada limited liability company whose principal place of business is in Ohio.

179.     Upon information and belief, Justin Purvis was a New Jersey resident until October of 2016, and a Kentucky resident thereafter.

14

## JURISDICTION AND VENUE

180.     This is an action for beach of a consulting agreement between Justin Purvis and GB Entertainment, entered into on or about February 22, 2017 (the "Consulting Agreement"), an account stated, unjust enrichment (in the alternative), and Justin Purvis' subsequent tortious interference with GB Entertainment's and GB Studio's business relations.

181.     This Consulting Agreement is the same agreement that Plaintiffs mis-identify as an Employment Agreement in their Complaint, filed with this Court on or February 5, 2020, and which Plaintiffs maintain was breached in their Second and Third Causes of Action alleged therein.

182.     The nature of Justin Purvis' breach of the Consulting Agreement is his failure to pay GB Entertainment sales proceeds that he admittedly made acting on behalf of GB Entertainment as a consultant under the terms of the Consulting Agreement.

183.     Because the sales figures were provided by Justin Purvis, are not in dispute, and the amount GB Entertainment is entitled to from these sale proceeds is clearly and explicitly governed by the Consulting Agreement, GB Entertainment is also bringing a claim for account stated.

184.     As an alternative to its breach of contract claim, GB Entertainment is also bringing a claim for unjust enrichment for Justin Purvis' wrongful withholding of sales proceeds that belong in equity to GB Entertainment.

185.     Justin Purvis' tortious interference with GB Entertainment's prospective business relations began before and continued after Justin Purvis terminated the Consulting Agreement, when he began to solicit prospective GB Entertainment and GB Studio clients and partners for

his own economic benefit, including clients and partners he first met while performing his duties under the Consulting Agreement.

186.    The Complaint alleges breach of the Consulting Agreement, including that GB Entertainment allegedly failed to pay Justin Purvis the allegedly agreed upon compensation under the Consulting Agreement.

187.    Consequently, this court has jurisdiction over these Counterclaims.

188.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## FACTS COMMON TO ALL COUNTERCLAIMS

189.    On or about February 22, 2017, Justin Purvis and GB Entertainment entered into and executed the Consulting Agreement.

190.    Pursuant to the Consulting Agreement, Justin Purvis performed services for GB Entertainment's card and gaming division.  These services included gathering license opportunities, finding new gaming content, attending gaming conventions, and networking on behalf of GB Entertainment with other individuals and entities in the card and gaming industry.

191.    As consideration for entering into the Consulting Agreement, Justin Purvis was entitled to one hundred percent (100%) of the sales proceeds for the first thousands units he individually sold of the "Buff Games" line of products, including "Movie Buff", "TV Buff", "Music Buff", "Comic Book Buff", "Video Game Buff", "History Buff", and other similarly named works (collectively, the "Buff Games").  For sales of Buff Games beyond 1,000 units, Justin Purvis was entitled to retain twenty percent (20%) of the sale proceeds, and the remaining eighty percent (80%) belonged to GB Entertainment, pursuant to the terms of the Consulting Agreement.

16

192.    While working as a consultant for GB Entertainment at conventions, Justin Purvis was also authorized under the Consulting Agreement to sell games distributed by GB Entertainment that were not Buff Games works (the "non-Buff Games").

193.    Pursuant to the Consulting Agreement, eighty percent (80%) of sales of non-Buff Games made by Justin Purvis at conventions would belong to GB Entertainment, with the remaining twenty percent (20%) belonging to Justin Purvis.

194.    Upon information and belief, between March 31, 2017, and September 29, 2017, Justin Purvis attended approximately 21 conventions as a consultant for GB Entertainment where he, pursuant to the Consulting Agreement, offered and sold both Buff Games and non-Buff Games.

195.    Upon information and belief, during these conventions, Justin Purvis consummated sales of both Buff Games and non-Buff Games via cash transactions and/or mobile credit and debt payments, from which he would deposit the sales revenue received into his personal bank account.  He was then expected and contractually obligated to wire or otherwise transfer the appropriate proportion of such sales revenue to GB Entertainment, which he did not.

196.    On or about September 7, 2017, Justin Purvis submitted to GB Entertainment a sales report (the "Sales Report") whereby he provided an account of the number of Buff Games and non-Buff Games units sold during these conventions, and the profits derived therefrom. He has failed to provide any further sales reports since December 6, 2017.

197.    As stated in the Sales Report, Justin Purvis generated $33,370.00 in total sales. That amount included $18,675.00 from the sale of 747 units of Buff Games, all of which Justin Purivs was entitled to retain because those were part of the 1,000 units that he received as partial consideration for entering into the Consulting Agreement.  Purvis was also entitled to retain

twenty percent (20%) of the remaining $14,695.00 sales of non-Buff Games.  Thus, in total, Justin Purvis was entitled to retain $21,614.00.

198.    At the same time, pursuant to the Consulting Agreement, GB Entertainment was entitled to receive eighty percent (80%) of the $14,695.00 sales of non-Buff Games, which is $11,756.00.

199.    Despite $11,756.00 being due and owing to GB Entertainment under the unambiguous terms of the Consulting Agreement and Justin Purvis' own accounting of the sales made at the conventions he attended as GB Entertainment's consultant, to date, Justin Purvis has failed to make any payment or transfer of these convention sale proceeds to GB Entertainment.

200.    Upon information and belief, Justin Purvis made additional sales of non-Buff Games which were not reported to GB Entertainment in the Sales Report, or in any other report, for which Justin Purvis owes GB Entertainment eighty percent (80%) of the sales revenue.

201.    In a letter to Justin Purvis dated February 7, 2018, GB Studios demanded that Purvis pay GB Entertainment the sums owed to it from the sales revenue that he generated at the conventions that he attended.

202.    Justin Purvis still refused to pay or transfer the $11,756.00 and other amounts owed to GB Entertainment for convention sales and has failed to provide GB Entertainment with an accounting of the remaining inventory in his possession, which is believed to be worth in excess of $50,000.00.

**JUSTIN PURVIS TERMINATES THE CONSULTING AGREEMENT**
**AND BEGINS TO SOLICIT GB CLIENTS AND PROSPECTIVE CLIENTS**

203.    On or about December 6, 2017, Justin Purvis unilaterally terminated the Consulting Agreement and his relationship with GB Entertainment as a consultant.

204.    Before and after terminating his Consulting Agreement with GB Entertainment, Justin Purvis, solely to further his own pecuniary benefit, began reaching out to game developers and distributors he had previously engaged with as clients and potential clients for GB Entertainment while still serving as a consultant for GB Entertainment.

205.    For instance, on May 25, 2017, while using his GB Studios email account, Justin Purvis reached out to Justin Bybee, a game developer, to offer GB Studios and GB Entertainment services to help him market and distribute his products.

206.    On January 25, 2018, after Justin Purvis had terminated his relationship as a consultant with GB Entertainment, Bybee responded that he was interested in Justin Purvis' original proposal and wished to discuss the opportunity with GB Studios and GB Entertainment further.

207.    That same day, on January 25, 2018, Just Purvis responded and stated "I have left Golden Bell Games and opened up my own company, Purvis Games.  But I think that we may still be able to help each other."

208.    In that same email, Justin Purvis proceeded to offer distribution and marketing services to Bybee, which services he had originally offered on behalf of, and while serving as a consultant for, GB Entertainment.

209.    Upon information and belief, Justin Purvis deleted and purged numerous email communications, like that of the email chain described above, from this GB Studios email account.

210.    Upon information and belief, such communications related to Justin Purvis' solicitation of current and potential clients of GB Studios and GB Entertainment for his personal

benefit as a principal of Purvis Games.  These relationships were initiated pursuant to his role as a consultant for GB Entertainment.

211.    On or about January 30, 2018, Justin Purvis emailed a separate game developer that had business relationships with GB Studios and/or GB Entertainment to solicit to have Purvis Games distribute the developer's product, rather than GB Studios and/or GB Entertainment.

212.    Justin Purvis continued this course of conduct, reaching out to at least five other game designers who were prospective clients with GB Studios and/or GB Entertainment to solicit these developers to sell their games through Purvis Games, in violation of their respective agreements with GB Studios and/or GB Entertainment.

213.    Upon information and belief, during this period after Justin Purvis terminated the Consulting Agreement, he would often misrepresent to the prospective and current customers of GB Studios and/or GB Entertainment that he was still a consultant with GB Entertainment in order to mislead the prospective and current customers to allowing Justin Purvis to distribute and sell their game products.

214.    Upon information and belief, each and every game developer that Justin Purvis solicited for his own personal benefit as clients for Purvis Games were developers that Justin Purvis met while acting as a consultant for GB Entertainment under the terms of the Consulting Agreement.

215.    Given that Justin Purvis purged his emails from his GB Studios email address, and often attended gaming conventions by himself as a consultant and agent for GB Entertainment, the full scope of Justin Purvis' tortious interference with GB Studios' and/or GB

20

Entertainment's prospective clients, both during and after his term as a GB Entertainment

consultant, is presently unknown but at least in excess of six prospective clients.

216.    Upon information and belief, Justin Purvis was able to reach out to additional

prospective clients of GB Studios and/or GB Entertainment through misappropriating

confidential information belonging to GB Studios and/or GB Entertainment, such as their current

and prospective customer relationship lists.

### FIRST COUTNERCLAIM
### (Breach of the Consulting Agreement)

217.    Counterclaim-Plaintiff GB Entertainment repeats and re-alleges the allegations set

forth in Paragraphs 173 to 216 as if fully set forth herein.

218.    The Consulting Agreement is a valid contract between Justin Purvis and GB

Entertainment.

219.    GB Entertainment fully performed its obligations under the Consulting

Agreement.

220.    As set forth above, pursuant to the Consulting Agreement, Justin Purvis was

contractually entitled to twenty percent (20%) of the sale proceeds from non-Buff Games he sold

while attending gaming conventions as a consultant for GB Entertainment.

221.    Pursuant to the Sales Report submitted by Justin Purvis to GB Entertainment

accounting for the sales he made while attending gaming conventions in accordance with his

obligations under the Consulting Agreement, Justin Purvis sold 33,370.00 in total sales,

including $18,675.00 in Buff Games sales and $14,695.00 in non-Buff Games.

222.    Pursuant to the applicable terms of the Consulting Agreement, Justin Purvis was

entitled to $21,614.00.as commission payments from this $33,370.00 in total sales.

223.     To date, Justin Purvis has withheld from GB Entertainment the entirety of the revenue generated from sales made during conventions of Buff Games and non-Buff Games, despite GB Entertainment making written demand for the amounts owed to it pursuant to the clear and explicit terms of the Consulting Agreement.

224.     Consequently, Justin Purvis owes at least $11,756.00 to GB Entertainment pursuant to the terms of the Consulting Agreement, which he has breached by his failure to pay.

225.     The Consulting Agreement also prohibited Justin Purvis from competing with GB Entertainment in the sale of games and explicitly precluded him from distributing works that interfere with GB Entertainment's line of products.  Further, Justin Purvis was only authorized to sell and distribute GB Entertainment's product line pursuant to the terms of the Consulting Agreement.

226.     Justin Purvis breached each of these contractual obligations by, among other things, soliciting business for himself using the tradename Purvis Games while employed as a consultant for GB Entertainment as a means to wrongfully poach GB Entertainment and GB Studios current and prospective clients.

227.     As a consequent of the aforementioned breaches of the Consulting Agreement, GB Entertainment was damaged in an amount to be determined at trial, but believed to be not less than $150,000.00.

## SECOND CAUSE OF ACTION
### (Account Stated)

228.      Counterclaim-Plaintiff GB Entertainment repeats and re-alleges the allegations set forth in Paragraphs 173 to 227 as if fully set forth herein.

229.     Justin Purvis was obligated to remit payment to GB Entertainment in the amount of $11,756.00 for GB Entertainment's share of the sales revenue generated at gaming

conventions, as reflected in the Sales Report prepared by Justin Purvis, pursuant to the terms of the Consulting Agreement.

230.    GB Entertainment received the Sales Report prepared by Justin Purvis.

231.    GB Entertainment and Justin Purvis were in agreement, and neither have disputed, that the Sales Report constituted an accurate reflection of the sales made by Justin Purvis at gaming conventions during the time that he was providing services to GB Entertainment pursuant to the terms of the Consulting Agreement.

232.    Justin Purvis and GB Entertainment were in agreement regarding the allocation of the proceeds of such sales as clearly and explicitly set forth in the Consulting Agreement.

233.    GB Entertainment has made repeated demands to Justin Purvis for the amount due to it based on the Sales Report.

234.    By reason of the foregoing, Justin Purvis is liable to GB Entertainment in an amount to be determined at trial, but no less than $11,756.00.

### THIRD COUNTERCLAIM
#### (Unjust Enrichment)

235.    Counterclaim-Plaintiff GB Entertainment repeats and re-alleges the allegations set forth in Paragraphs 173 to 234 as if fully set forth herein.

236.    In the alternative, GB Entertainment is entitled to recover for Justin Purvis' unjust enrichment.

237.    GB Entertainment provided Justin Purvis with the non-Buff Games and Buff Games inventory that he sold to customers at the gaming conventions he attended as a consultant and agent for GB Entertainment.

238.     Justin Purvis attended these gaming conventions as a vendor solely through his consultancy relationship with GB Entertainment, which would often pay for the expenses of attending these conventions.

239.     Justin Purvis has retained one hundred percent (100%) of all of the proceeds of the sale of GB Entertainments game inventory sold at these gaming conventions.

240.     Justin Purvis has refused to remit any amount of the sales made at these gaming conventions to GB Entertainment.

241.     At the time Justin Purvis terminated the Consulting Agreement, he was in possession of thousands of game products belonging to GB Entertainment or GB Studios. Despite demands from Defendants, Justin Purvis has never returned these products to Defendants.

242.     Upon information and belief, even before terminating the Consulting Agreement, Justin Purvis created the website purvisgames.com, on which he was selling this wrongfully appropriated inventory that rightfully belongs to GB Entertainment for GB Entertainment for his own personal financial benefit.

243.     In addition, upon information and belief, Justin Purvis has visited and continues to visit retail stores that sell gaming and entertainment content where, like through his website, he sells inventory belonging to GB Entertainment and GB Studios, which he acquired during his time as a consultant for GB Entertainment, for his own personal benefit.

244.     Thus, Justin Purvis has been unjustly enriched, at an amount to be determined at trial.

## FOURTH COUNTERCLAIM
### (Tortious Interference with Prospective Business Relations)

245.    Counterclaim-Plaintiffs GB Entertainment and GB Studios repeat and re-allege the allegations set forth in Paragraphs 173 to 244 as if fully set forth herein.

246.    At all relevant times, GB Entertainment and GB Studios had ongoing business relationships with hundreds of game developers and distributors, from whom GB Studios and/or GB Entertainment would solicit business in the form of distribution, marketing, and sales relationships.

247.    These relationships often developed through a series of increasingly larger-in-scope contractual relationships between GB Entertainment and/or GB Studios, on the one hand, and the game developer on the other, involving the development, marketing and distribution of new and existing games.  Consequently, these business relations would commonly involve renewals of fulfillment agreements and regular negotiations to augment existing agreements or enter into new agreements.

248.    In the highly competitive gaming marketplace, GB Studios' and GB Entertainment's businesses require building new business relationships and expanding upon existing business relationships with game developers across the world, so that GB Studios can partner with these companies to expand its own portfolio of offered games and work collaboratively with other content creators to create new games and intellectual property.

249.    Justin Purvis had full knowledge of the products GB Studios and GB Entertainment sold, as well as the product lines GB Studios and GB Entertainment were interested in pursuing.  As a consultant for GB Entertainment, he was responsible primarily for selling GB Studios' and GB Entertainment's lines of gaming products, including products owned by Defendants and third-party products Defendants sold through distribution agreements, and

attending gaming conventions to network and identify potential partnerships with other game developers.

250.    Both during and after his time as a consultant for GB Entertainment, Justin Purvis knowingly and intentionally solicited GB Studios and/or GB Entertainment clients with the offer to sell their products pursuant to agreements with Purvis Games.

251.    In at least one instance, Justin Purvis used his GB Studios company email address to solicit a potential business partner of GB Studios and/or GB Entertainment after he terminated his consulting agreement.

252.    Based upon investigations to date, GB Studios and GB Entertainment are aware of at least six potential business partners and game developers from whom Justin Purvis solicited business from, all of whom Justin Purvis identified and targeted while working as a consultant for GB Entertainment, and with the knowledge that these game developers were either current or prospective clients and collaborators of GB Studios and GB Entertainment.

253.    Upon information and belief, during some of these solicitations Justin Purvis misrepresented to these game developers that he was affiliated with GB Entertainment even after he terminated his consultancy agreement with GB Entertainment, thereby trading upon GB Entertainment's reputation and good will in the gaming and larger entertainment industry and within its business network.

254.    Justin Purvis identified and solicited at least these six business relationships of GB Studios and/or GB Entertainment by misappropriating GB Studios' and GB Entertainment's confidential customer and potential customer lists, which he had access to, and which he was contractually obligated to keep confidential, as a consultant for GB Entertainment.

255.     Upon information and belief, while attending gaming conventions as a representative and consultant for GB Entertainment, Justin Purvis also used that time to solicit business for and sell inventory through Purvis Games for his own pecuniary benefit and develop potential clients for Purvis Games, rather than GB Entertainment.

256.     Upon information and belief, in conjunction with his outreach to potential and existing GB Entertainment and GB Studios clients, Justin Purvis would disparage and defame Defendants, thereby hurting their ability to effectively build new business relationships with game developers and distributors.

257.     Upon information and belief, Justin Purvis solicited numerous other current and potential customers of GB Studios and GB Entertainment from their confidential list of such customers using his GB Studios email address and/or personal email address, both during and after his time as a GB Entertainment consultant, for his own personal benefit as principal of Purvis Games.

258.     Upon information and belief, had Justin Purvis fulfilled his obligations under the Consulting Agreement and acted loyally, GB Entertainment and GB Studious would have been able to expand or retain new business with additional entertainment content developers that Justin Purvis solicited.

259.     Upon information and belief, had Justin Purvis fulfilled his obligations under the Consulting Agreement, and acted loyally, rather than usurping these opportunities to self-promote and make sales for his own personal benefit, additional sales at gaming conventions and additional business development would have been made for GB Entertainment's and GB Studios' benefit.

260.     As a direct and proximate result of Justin Purvis's intentional and wrongful interference with GB Studios' and GB Entertainment's aforementioned business relationships, as heretofore described, GB Studios and GB Entertainment have been damaged in an amount to be determined at trial, but believed to be no less than $150,000.00.

### FIFTH COUNTERCLAIM
### (Breach of the Duty of Loyalty)

261.     Counterclaim-Plaintiff GB Entertainment repeats and re-alleges the allegations set forth in Paragraphs 173 to 260 as if fully set forth herein.

262.     The Consulting Agreement is a valid contract between Justin Purvis and GB Entertainment.

263.     GB Entertainment fully performed its obligations under the Consulting Agreement.

264.     The terms and obligations of the Consulting Agreement created an agent-principal relationship between Justin Purvis and GB Entertainment, pursuant to which Purvis had an obligation of loyalty to GB Entertainment, and was prohibited from acting in any manner inconsistent with his agency and trust, and was at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.

265.     By extension, Justin Purvis had a duty not to use GB Entertainment's confidential information acquired through his term as GB Entertainment's agent in competition with GB Entertainment.

266.     Justin Purvis violated his duty of loyalty to GB Entertainment by, among other things:

     a.     Soliciting GB Entertainment's current and prospective clients, both during and after his time as GB Entertainment's agent, to obtain business for Purvis Games at the expense of GB Entertainment;

     b.     Misappropriating GB Entertainment's confidential current and potential client customer lists to identify business opportunities for Purvis Games;

     c.     Misrepresenting to GB Entertainment's current and potential clients that he was still affiliated with GB Entertainment even after he terminated the Consultancy Agreement;

     d.     Disparaging and defaming Defendants at gaming conventions and during in his conversations with game developers, including, but not limited to, that Defendants wrongfully refused to pay him and were otherwise unethical business partners.

     e.     Using his time at gaming and pop-culture conventions as a representative agent of GB Entertainment to promote Purvis Games to game developers in the industry and in direct sales to attendees; and

     f.     Wrongfully withholding at least $11,756.00 in sale proceeds from the sale of GB Entertainment inventory from GB Entertainment in direct violation of the Consulting Agreement.

267.     As a direct and proximate result of Justin Purvis' breach of his duty of loyalty owed to GB Entertainment as its agent, GB Entertainment has been damaged in an amount to be determined at trial, but believed to be no less than $150,000.00.

## PRAYER FOR RELEIF

**WHEREFORE**, Defendants and Counterclaim-Plaintiffs respectfully request the following relief:

     A.     Dismissal of the Complaint with prejudice;

B.      On the First Counterclaim, an award of money damages in favor of GB Entertainment and against Plaintiff Justin Purvis in an amount to be determined at trial, but believed to be no less than $150,000.00;

C.      On the Second Counterclaim, an award of money damages in favor of GB Entertainment and against Plaintiff Justin Purvis in an amount to be determined at trial, but no less than $11,756.00;

D.      On the Third Counterclaim, an award of money damages in favor of GB Entertainment and against Plaintiff Justin Purvis in an amount to be determined at trial;

E.      On the Fourth Counterclaim, an award of money damages in favor of GB Entertainment and GB Studious against Plaintiff Justin Purvis in an amount to be determined at trial, but believed to be no less than $150,000.00; and

F.      On the Fifth Counterclaim, an award of money damages in favor of GB Entertainment against Plaintiff Justin Purvis in an amount to be determined at trial, but believed to be no less than $150,000.00.


Dated:          New York, New York
                May 12, 2020


                                        **MORITT HOCK & HAMROFF LLP**
                                        Attorneys for Defendants


                                        By: _/s/ Robert S. Cohen_
                                             Robert S. Cohen
                                             Michael J. Schwab
                                             Alex D. Corey
                                        1407 Broadway, 39th Floor
                                        New York, New York 10018
                                        (212) 239-2000